**The STATE of Ohio, Appellee,**

**v.**

**GRIFFIN, Appellant.**

[Cite as *State v. Griffin,* 175 Ohio App.3d 325, 2008-Ohio-702.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070324.

Decided Feb. 22, 2008.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Judith Anton Lapp, Assistant Prosecuting Attorney, for appellee.

Michaela M. Stagnaro, for appellant.

SYLVIA S. HENDON, Judge.

{¶ 1} Following a jury trial, defendant-appellant, David Griffin, was found guilty of felony murder, under R.C. 2903.02(B), and voluntary manslaughter, under R.C. 2903.03(A). Each offense related to the death of Eric White. Griffin had stipulated to accompanying repeat-violent-offender specifications. The trial court imposed 15 years' to life imprisonment for Griffin's felony-murder conviction and a consecutive ten years' imprisonment for the accompanying repeat-violent-offender specification. No separate sentence was imposed for voluntary manslaughter and its accompanying specification. Griffin received an aggregate sentence of 25 years' to life imprisonment.

{¶ 2} Griffin now appeals, asserting five assignments of error for our review. Because the trial court erred by failing to properly instruct the jury, we must reverse Griffin's conviction and remand this case for a new trial.

### Factual Background

{¶ 3} On September 23, 2006, Griffin allowed Tammy Whalen and Eric White to use his apartment to smoke crack cocaine. Griffin and Whalen were prior acquaintances, but Griffin had not previously known White. Whalen and White provided Griffin with a portion of crack cocaine in return for Griffin allowing them to use his apartment.

{¶ 4} The record indicates that White, while under the influence of the crack cocaine, became belligerent and, according to Whalen, was "really freaking out." Whalen testified that White had prevented her from leaving Griffin's apartment by blocking the door. According to Whalen, Griffin attempted to call 911 for assistance, but she had asked him not to because she did not want to cause problems for White. Whalen further testified that Griffin had attempted to push White out the door without putting his hands on White, but that White had hit Griffin in the face. After being hit, Griffin produced a butcher knife. Whalen testified that the two men began fighting, moving out of Griffin's apartment and down the stairs. Whalen did not witness White's murder because she had left Griffin's apartment on the fire escape.

{¶ 5} Griffin had lived on the fourth floor of his apartment building. He and White had traveled down one flight of stairs while fighting. Their fight terminated on the third floor, where White's body was found. Deborah Lear, a resident on the second floor of Griffin's apartment building, testified that she had heard banging noises on the floor above her and that she had heard someone say "die, mother-fucker, die." Lear further testified that although she had originally told the police that she did not know which man had made this statement, she now believed that Griffin had uttered it.

{¶ 6} John King resided on the third floor of Griffin's apartment building. King testified that on September 23, 2006, he had witnessed Griffin and White fighting as he looked out the peephole in his apartment door. According to King, White had pushed Griffin away in an attempt to reach the next set of stairs to leave. King further testified that he had seen Griffin straddling White on the ground with his hands extended forward and that he believed that Griffin was strangling White. Although White appeared to be unconscious, Griffin straddled him for approximately three minutes. According to King, Griffin kicked White when he stood up. Griffin further went up the stairs, but returned after approximately five minutes to check White's neck and to kick him again.

{¶ 7} Michael Kenney, a forensic pathologist with the Hamilton County Coroner's Office, conducted an autopsy on White. White suffered numerous puncture wounds to the left side of his chest, his neck, and his face. White's eyes had petechial hemorrhages and gross bleeding, which Kenney stated were signs of strangulation. Kenney testified that White had died from asphyxiation due to strangulation and that White had not died from a cocaine overdose.

{¶ 8} Griffin testified on his own behalf, arguing that he had acted in self-defense. According to Griffin, White had refused to leave his apartment. As Griffin tried to make White leave, White punched him in the face. After being punched, Griffin grabbed a knife from his stove and attempted to force White out of the apartment by waving the knife. According to Griffin, White had repeated-

ly stated that he was going to kill Griffin. White grabbed for the knife and broke its handle. Griffin testified that he had tried to get away, but that White kept hitting him and squeezing his throat. Griffin tried to escape by gouging White's eyes for pressure points. Eventually, Griffin began choking White because he was "fighting for his life." According to Griffin, he ceased choking White when White stopped choking him back. Griffin asserted that White had been alive when he returned to his apartment. He further denied kicking White or returning to the third floor to check on White's body. Griffin revealed during his testimony that he had a prior conviction for rape.

{¶ 9} Griffin also presented testimony from Dr. Ross Zumwalt, the chief medical examiner for the state of New Mexico, in the form of a videotaped deposition. Dr. Zumwalt had reviewed the autopsy report prepared by Dr. Kenney, the toxicology report, and a statement from Griffin. After reviewing these items, Zumwalt opined that White's cause of death had been a combination of strangulation, cocaine intoxication, and physical exhaustion. According to Zumwalt, these factors caused a cardiac arrhythmia, which Zumwalt referred to as the mechanism of death. On cross-examination, Zumwalt stated that it was improbable that the presence of cocaine would have killed White absent the strangulation. Zumwalt further conceded that there was no evidence of a cardiac arrhythmia in the report prepared by Dr. Kenney.

### Jury Instructions

{¶ 10} We begin our analysis with Griffin's fourth assignment of error, as it is dispositive of his appeal. In this assignment, Griffin argues that the trial court failed to properly instruct the jury on felony murder and voluntary manslaughter. Griffin argues that because voluntary manslaughter is an inferior degree of murder, the trial court erred in informing the jury that it could find Griffin guilty of both offenses. Griffin is correct.

{¶ 11} The trial court instructed the jury that "[i]f you find that the state proved beyond a reasonable doubt all the essential elements of the offense of murder in count one and/or voluntary manslaughter [in] count two, and that the defendant failed to prove by [a] preponderance of the evidence the defense of self[-]defense, then your verdict must be guilty of murder in count one and/or voluntary manslaughter in count two."

{¶ 12} The instruction provided by the trial court allowed the jury to find Griffin guilty of both felony murder and voluntary manslaughter. And the jury in fact found Griffin guilty of both offenses. But as this court has previously held in *State v. Duncan*, "[a] person cannot be convicted of both murder and voluntary manslaughter for the same killing." [1]

---

1. *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, ¶ 24.

{¶ 13} In *Duncan*, the defendant had been indicted for murder, felony murder, and voluntary manslaughter and had been found guilty of all three offenses. The *Duncan* court held that because voluntary manslaughter is an inferior degree of murder, the jury should have been instructed that Duncan could have been convicted of *either* murder *or* voluntary manslaughter. The court stated that "[t]he Ohio Jury Instructions recommend that a jury be told that if it finds a defendant has committed murder, but also finds that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, 'then you must find the defendant not guilty of murder and guilty of voluntary manslaughter.'"[2] This jury instruction encompasses both purposeful murder and felony murder.

{¶ 14} Applying *Duncan*, the trial court should have instructed the jury in this case that if it found that Griffin had committed felony murder, but additionally found the presence of a mitigating circumstance under voluntary manslaughter, it had to find Griffin guilty of voluntary manslaughter rather than felony murder.

{¶ 15} In regard to the mitigating circumstances associated with voluntary manslaughter, our review of the record has revealed another error in the jury instructions provided by the trial court. R.C. 2903.03 defines voluntary manslaughter as "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

{¶ 16} The trial court instructed the jury that "[b]efore you can find [Griffin] guilty of voluntary manslaughter, you must find * * * that [Griffin] knowingly caused the death of Eric White." The trial court omitted all references to the mitigating circumstances contained within the voluntary-manslaughter statute. In *State v. Rhodes*, the Ohio Supreme Court held that "[i]f a defendant is not charged with murder or aggravated murder, but rather is on trial for voluntary manslaughter, neither party is required to establish either of the mitigating circumstances. Rather, the court presumes * * * the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder."[3]

{¶ 17} But when a defendant is charged with both murder and voluntary manslaughter, the trial court must instruct the jury on the mitigating circumstances contained within the voluntary-manslaughter statute. Because the state

---

2. Id. at ¶ 29, quoting 4 Ohio Jury Instructions (2002), Section 503.02, at 156.

3. *State v. Rhodes* (1992), 63 Ohio St.3d 613, 618, 590 N.E.2d 261.

chose to charge Griffin with both offenses, the trial court could not have presumed the existence of the mitigating circumstances.

{¶ 18} On this record, we cannot determine whether the jury would have found Griffin guilty of felony murder had it been properly instructed on voluntary manslaughter. Griffin's fourth assignment of error is sustained. On remand, Griffin may be retried for both felony murder and voluntary manslaughter. But the trial court must properly instruct the jury on the mitigating circumstances of voluntary manslaughter. It must further instruct the jury that if the jury finds the presence of one of the mitigating circumstances, it must find Griffin guilty of voluntary manslaughter rather than felony murder.

### *Prosecutorial Misconduct*

{¶ 19} In his first assignment of error, Griffin argues that he was denied his right to a fair trial based on prosecutorial misconduct. To succeed on an allegation of prosecutorial misconduct, a defendant must demonstrate that the prosecutor's remarks were improper and that the remarks prejudicially affected the defendant's substantial rights.[4] The prosecutor's statements must be evaluated in light of the entire trial, and not just in the immediate context in which the statements arose.[5]

{¶ 20} Griffin argues that the prosecutor committed misconduct by improperly questioning him about a prior rape conviction. Before the trial began, the trial court cautioned the prosecutor that should Griffin testify, the prosecutor was entitled to bring out Griffin's prior conviction for rape, but was not permitted to question Griffin on the details of the rape, specifically that the victim had been Griffin's daughter. On direct examination, Griffin revealed his prior rape conviction. And on cross-examination, the prosecutor asked Griffin, "And that rape offense involved your daughter, didn't it?"

{¶ 21} Griffin objected immediately. His objection was sustained by the trial court. The trial court ordered the jury to disregard the question, but declined to grant a mistrial, observing, however, that it was a "close question." During a sidebar conference, the prosecutor argued that he believed that Griffin's testimony on direct examination had entitled him to impeach Griffin's character with the circumstances of the rape. Specifically, the prosecutor cited Griffin's testimony that he had been married, had children, and had been honorably discharged from the Army.

---

4. *State v. Smith* (1998), 130 Ohio App.3d 360, 366, 720 N.E.2d 149.

5. *State v. Kelly*, 1st Dist. No. C–010639, 2002-Ohio-6246, 2002 WL 31528695, at ¶ 22, citing *State v. Keenan* (1993), 66 Ohio St.3d 402, 410, 613 N.E.2d 203.

{¶ 22} The prosecutor's question was improper. The trial court had explicitly cautioned the prosecutor prior to trial and had proscribed any questions regarding the circumstances of Griffin's rape conviction. The prosecutor blatantly ignored the trial court's order. To do so was to invite reversal. If the prosecutor believed that Griffin's testimony on direct examination entitled him to impeach Griffin's character with details of the rape, the prosecutor should have requested a sidebar conference and provided the trial court with an opportunity to determine whether the circumstances had sufficiently changed to warrant further cross-examination.

{¶ 23} Despite the prosecutor's improper question concerning Griffin's prior rape conviction, we conclude that Griffin's substantial rights were not affected and that he was not denied a fair trial because of the curative instructions provided by the trial court and because the record contained ample evidence of guilt.

{¶ 24} Griffin questions further comments made by the prosecutor during closing argument. But these additional comments drew no objection at trial and are subject to a plain-error review.[6] Following our review of the record, we conclude that these comments were not improper and certainly did not affect the outcome of the trial.

{¶ 25} The first assignment of error is overruled.

### Sufficiency and Weight of the Evidence

{¶ 26} In his third assignment of error, Griffin argues that the guilty verdicts for felony murder and voluntary manslaughter were not supported by sufficient evidence and were against the manifest weight of the evidence. Because we are remanding this case for retrial, we need only address whether the guilty verdicts were supported by sufficient evidence.

{¶ 27} When reviewing the sufficiency of the evidence, this court must determine "whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt."[7]

{¶ 28} We have already defined voluntary manslaughter. Felony murder is defined in R.C. 2903.02(B) as "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree." In this case, the state alleged that Griffin had caused White's death while committing felonious assault.

---

6. Id. at ¶ 22.

7. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 29} Griffin specifically argues that he established that he had acted in self-defense. To succeed on the affirmative defense of self-defense, a defendant must establish that "(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." [8]

{¶ 30} In this case, the record contains conflicting evidence on the second and third elements of self-defense. Griffin testified that White had initiated the confrontation by punching Griffin and that White had repeatedly stated that he was going to kill Griffin. But the jury also heard testimony from Deborah Lear that Griffin had exclaimed "die, mother-fucker, die." And John King testified that Griffin had prevented White from retreating down the next set of stairs and that Griffin had continued to strangle White after White had been rendered unconscious.

{¶ 31} The jury was in the best position to judge the credibility of the witnesses. It was entitled to believe some, all, or none of Griffin's testimony. Following our review of the record, we conclude that a rational trier of fact could reasonably have determined that Griffin had not proved the elements of self-defense by a preponderance of the evidence.

{¶ 32} Because Griffin did not prove self-defense, there was sufficient evidence to support the guilty verdicts for felony murder and voluntary manslaughter.

{¶ 33} The third assignment of error is overruled.

### Remaining Assignments of Error

{¶ 34} In his second assignment of error, Griffin argues that he was denied the effective assistance of trial counsel. And in his fifth assignment of error, he argues that the trial court erred in overruling his motion for a mistrial based on prosecutorial misconduct. Because we are reversing Griffin's conviction and remanding this case for a new trial, these assignments of error are moot and need not be addressed.

{¶ 35} In summary, Griffin's fourth assignment of error is sustained. The trial court's judgment is reversed, and this cause is remanded for a new trial consistent with the law and this decision.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., and CUNNINGHAM, J., concur.

---

8.` *State v. Thomas* (1997), 77 Ohio St.3d 323, 326, 673 N.E.2d 1339.