[Cite as *State v. Hawthorne*, 2018-Ohio-1180.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 105121

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# MICHAEL G. HAWTHORNE

DEFENDANT-APPELLANT

---

## JUDGMENT:
### REVERSED AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-603041-A

**BEFORE:** Jones, J., Keough, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** March 29, 2018

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:   Andrea N. Isabella
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Michael Hawthorne ("Hawthorne"), appeals his convictions on two counts of felonious assault with firearm specifications. For the reasons that follow, we reverse and remand.

{¶2} In 2016, Hawthorne was charged with attempted murder and felonious assault with one- and three-year firearm specifications and with an additional count of felonious assault. He was charged in a separate case with having weapons while under disability. The trial court consolidated the two cases for trial over the objection of defense counsel. The following pertinent facts were presented at the jury trial.

{¶3} Brittany Austin ("Austin") and Hawthorne dated on and off through high school until 2015 and had three children together. Austin started dating James Cooperwood ("Cooperwood") in November 2015.

{¶4} On January 10, 2016, Hawthorne dropped the children off at their mother's house after spending some time with them. Soon thereafter, Austin called Hawthorne to inquire about Cooperwood's duffel bag, which contained CDs and DVDs Cooperwood sold for cash. The couple alleged that Hawthorne stole it. After Austin's attempts to get Hawthorne to come over failed, Cooperwood called Hawthorne, and Hawthorne agreed to come over.

{¶5} Cooperwood went downstairs to meet Hawthorne. On his way, he grabbed a bat and told Austin he was "about to bust the b[***] head open." Moments later, Austin heard gunshots and went downstairs to find Cooperwood bleeding on the front porch.

She did not see who shot Cooperwood.

{¶6} Cooperwood sustained a gunshot injury to both legs and a shattered femur. He initially identified Hawthorne as the shooter, but during trial, Cooperwood testified that he had never met Hawthorne and did not remember telling police that Hawthorne had shot him. After further questioning, however, Cooperwood testified that Hawthorne shot him. According to Cooperwood, he argued with Hawthorne on the phone about the duffel bag and told Hawthorne "to come back over and return my things, or it was going to be a problem. He actually came back, but he came back empty handed. When I approached him, he shot me. That's it. That's what happened." Cooperwood admitted he had a bat, but denied threatening Hawthorne with the bat, testifying that the bat was "laying up against the rail."

{¶7} After the state presented its evidence, the court asked defense counsel if anyone would be testifying for the defense. Counsel indicated that he had subpoenaed a witness who had shown up to court on previous occasions but did not appear pursuant to the current subpoena. According to defense counsel, this witness would support the claim that Hawthorne was attacked by Cooperwood. The court stated it would issue a material witness warrant for the witness, but, before the warrant was issued, the court informed counsel that the defense of self-defense applied only in cases where the defendant him or herself took the stand. The court told defense counsel that it would give "as much time as you want to try to secure this person, but that person isn't the person who can testify and give you the self-defense argument. So if you're going to

argue self-defense to this jury * * * then the only way that comes in is if Mr. Hawthorne testifies."

{¶8} Hawthorne chose not to testify in his own defense, and the court did not instruct the jury on self-defense.

{¶9} The jury convicted Hawthorne of one count of felonious assault and one count of felonious assault with one- and three-year firearm specifications and acquitted him of the remaining charges. The trial court sentenced him to a total of five years in prison.

{¶10} Hawthorne filed a notice of appeal and has raised the following assignments of error for our review:

> I. The trial court denied the appellant due process and his right under Crim.R. 30(A) when the trial court failed to instruct the jury on self-defense and aggravated assault.

> II. The appellant was denied effective assistance of counsel in violation of Amendments VI and XIV, United States Constitution and Article I, Section 10, Ohio Constitution.

> III. Appellant was denied due process and a fair and impartial trial as guaranteed by the 5th, 6th, and 14th Amendments of the U.S. Constitution and Article I, Section 16 of the Ohio Constitution based on prosecutorial misconduct.

> IV. The trial court erred by prejudicially joining two cases which effectively violated appellant's due process and right to a fair trial.

{¶11} After oral arguments were heard in this case, we issued the following order:

"Sua sponte the parties are ordered to brief the issue of whether the trial court erred to the prejudice of Hawthorne when it informed him that he had to testify in order to advance a claim of self-defense."

**{¶12}** The parties complied with our order and submitted supplemental briefs. The above sua sponte order will be addressed with the first assignment of error, which is dispositive of this appeal.

**{¶13}** The Fifth and Fourteenth Amendments to the Constitution guarantee every criminal defendant the right to remain silent. Although a criminal defendant has a Fifth Amendment right not to testify, self-defense is an affirmative defense that requires the defendant to prove all the elements. *See* R.C. 2901.05(A) ("The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.")[1]

**{¶14}** The United State Supreme Court has held that Ohio's self-defense statute does not violate due process by placing the burden of proof on the defendant. *Martin v. Ohio*, 480 U.S. 228, 230, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). But because the burden of proving a claim of self-defense is on the defendant, it may be necessary for a defendant to testify in order to establish that defense. *State v. Seliskar*, 35 Ohio St.2d 95, 96, 298 N.E.2d 582 (1973), citing *State v. Champion*, 109 Ohio St. 281, 142 N.E. 141 (1924). By the very nature of a claim of self-defense, "no one is in a better position than the defendant to provide evidence to aid the jury in determining whether the defendant's acts were justified." *Id.* citing *id.* If a defendant cannot provide evidence on the issue of

---

[1] Self-defense will justify the use of force where the defendant can establish, by a preponderance of the evidence, that he or she was not the instigator of the altercation, acted under a reasonable belief that force was necessary to repel the imminent use of force by another, and did not violate any duty to retreat or avoid the danger. *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002).

self-defense other than his or her own testimony, then, in order to avail him or herself of the defense, he or she must testify. "In such event, the choice is that of the defendant, and, once he [or she] has decided to rely on self-defense and is required by the circumstances to testify in order to prove that defense, he [or she] necessarily must waive his [or her] constitutional right to remain silent." *Seliskar* at *id.*

{¶15} Thus, a defendant who does not testify is *not* precluded from requesting an instruction on self-defense if the evidence otherwise supports the defense. *State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110431, 2013-Ohio-1194, ¶ 24. In *Eichelbrenner*, the trial court denied the defendant's request for a self-defense instruction on the ground that he did not testify. The First District found that the trial court erred in that determination but that the error would be harmless unless the evidence otherwise supported an instruction on self-defense. The court reviewed the record and determined that it did not contain sufficient evidence to support a self-defense instruction, and therefore, although the trial court erred, the error was harmless pursuant to Crim.R. 52(A) because the instruction was not warranted. *Id.* at ¶ 30.

{¶16} This case is distinguishable from *Eichelbrenner*. Here, the trial court expressly told Hawthorne that in order to establish his defense, he had to testify. Hawthorne had a witness subpoenaed that he said would support his claim of self-defense. But the court told Hawthorne specifically that no one other than him could come into court and establish his state of mind at the time of the shooting.

{¶17} During trial, after the state rested its case, the trial court inquired whether

defense counsel would be calling any witnesses:

> Court: * * * [Y]ou claim self-defense. Are you going to be calling any witnesses?
>
> Defense: If the witness shows up. We subpoenaed the witness.
>
> * * *
>
> Court: You claim self-defense for this jury. Is your Defendant going to testify?
>
> Defense: No. She [the witness] would support the self-defense. She was the one witness who said there is somebody in the car. And she supports a claim that -- that Mr. Hawthorne was attacked by James Cooperwood.
>
> Court: [Prosecutor], would you like to respond? Well, * * * [defense counsel] made an opening statement to this Jury and argued self-defense. Is self-defense a valid defense when someone else comes in and testifies and not the Defendant?

Tr. 804-805.

> {¶18} During a short break in trial, defense counsel prepared a material witness warrant for the court to sign. Prior to issuing the warrant, the court stated:

> Court: *Self-defense applies only when the Defendant takes the stand.* It is not a Defense based on what someone else believed the Defendant believed he was in fear for his life. It is what the Defendant believed he was in fear for his life. He admits — it's an admission and a defense. I admit I committed the crime, but I believe I was in fear of my life. That is self-defense. So no witness can come in here and testify as to what Mr. Hawthorne believed he was in fear for his life or not. So I don't care — I mean, I'll give you as much time as you want to try to secure this person, but that person isn't the person who can testify and give you the self-defense argument.
>
> So if you're going to argue self-defense to this Jury, and if you're going to

argue self-defense, then the only way that comes in is if Mr. Hawthorne testifies. Now, he doesn't have to testify, but if he wants to testify, he can testify, and then you can argue self-defense. I'm going to put that on the record at this time.

Prosecutor: Do you want to question the Defendant if that's his decision?

Court: I should. Mr. Hawthorne, do you understand what I'm saying?

Hawthorne: Yes, I do.

Court: If you want to testify, and you believe that this is self-defense, you're the individual that has to testify —

Hawthorne: I understand.

Court: — as to that. I'll let you consult with your lawyers about that, and as soon as you come back with consulting, let me know, and we'll move forward here.

T. 825-826. (Emphasis added.)

{¶19} After the lunch recess, the trial court inquired whether the defense had any witnesses and defense counsel stated that they were unable to produce their witness. The court asked Hawthorne whether he was going to testify and he answered, "No." The court responded: "Okay. You don't wish to testify, and that's your choice. I'm not trying to force you one way or the other, but I just want to make sure it's your decision, okay?"

{¶20} Again, in *Seliskar*, 35 Ohio St.2d at 96, 298 N.E.2d 582, the Ohio Supreme Court foresaw a situation where a defendant may have to testify in order to prove self-defense. But the *Seliskar* court did not make testifying a requirement; on the

contrary, the court stated that the "choice is that of the defendant" and that in proving, by a preponderance of the evidence, that he or she acted in self-defense, the defendant can offer his or her own testimony *if necessary*. In this case, Hawthorne was not given that choice. This was not a situation where the trial court told the defendant that there was insufficient evidence to support his claim of self-defense and, therefore, Hawthorne needed to testify in order to establish his defense. Here, the trial court told Hawthorne that it was his "choice" whether to testify but Hawthorne was required to testify in his own defense in order to establish a claim of self-defense. The trial court misstated the law when it told Hawthorne that

> [s]elf-defense applies only when the Defendant takes the stand. * * * So no witness can come in here and testify as to what Mr. Hawthorne believed he was in fear for his life or not. So I don't care – I mean, I'll give you as much time as you want to try to secure this person, but that person isn't the person who can testify and give you the self-defense argument.

Thus, according to the trial court, the *only* way Hawthorne could claim self-defense was if he testified in his own defense.

{¶21} This court has previously noted that a defendant does not have to testify in his or her own defense in order to establish the defense of self-defense. In *State v. Lyons*, 8th Dist. Cuyahoga No. 43513, 1981 Ohio App. LEXIS 13428 (Dec. 3, 1981), this court stated: "The accused is free to choose between exercising his [or her] right to silence and pursuing his [or her] affirmative defense. Moreover, in many cases an accused may exercise his [or her] right to silence and still prove self-defense through the testimony of other witness." *Id.* at 4.

**{¶22}** We are cognizant of the fact that Hawthorne's subpoenaed witness did not appear to testify for trial. But there is no requirement that the testimony with regard to a claim of self-defense come solely from defense witnesses. Again, the outcome would be different if the trial court, after listening to all of the evidence, and finding out that the defense had no witnesses to present, informed Hawthorne that he would have to testify in order to claim self-defense. But, here, the trial court erroneously told Hawthorne it was a requirement for him to testify *prior* to knowing with certainty that the defense had no other witnesses or evidence to present and without considering the testimony of the state's witnesses.

**{¶23}** Therefore, we find that the trial court erred to the prejudice of Hawthorne when it informed him that he had to testify in order to advance a claim of self-defense.

**{¶24}** Next, we consider Hawthorne's claim that the trial court erred when it did not instruct the jury on the theory of self-defense. The state correctly points out that defense counsel did not object when the trial court said it was not including an instruction on self-defense. Thus, our review is for plain error. Crim.R. 30(A) provides that "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." Noncompliance with Crim.R. 30(A) waives all but plain error. *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 165. *See also* Crim.R. 52(B).

**{¶25}** "Notice of plain error * * * is to be taken with the utmost caution, under

exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "For a court to notice plain error, the error must be an obvious defect in a trial's proceedings, it must have affected substantial rights, and it must have affected the outcome of the trial." *State v. Steele*, 138 Ohio St.3d 1, 2013-Ohio-2470, 3 N.E.3d 135, ¶ 30, citing *State v. Eafford*, 132 Ohio St.3d 159, 2012-Ohio-2224, 970 N.E.2d 891, ¶ 11. Even if an error satisfies these three requirements, a reviewing court is not obliged to correct them. *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, citing Crim.R. 52(B).

{¶26} Here, a confluence of errors occurred. The trial court told Hawthorne that self-defense applies only when the defendant takes the stand. Hawthorne exercised his constitutional right not to testify, and the trial court failed to consider the testimony of other witnesses — specifically the victim, Cooperwood, and his girlfriend, Austin — in determining whether a jury instruction on self-defense was warranted. The failure to consider Cooperwood's and Austin's testimony was based on the court's erroneous belief that only Hawthorne's testimony could establish the defense.

{¶27} Austin testified that Cooperwood asked where his bat was and told Austin he was going to "bust" Hawthorne's head open and "whoop his a**." She further testified that she was trying to keep Cooperwood from going outside to confront Hawthorne but her boyfriend told her to "get the f*** off him before he beat [her] a**."

{¶28} Cooperwood testified that he called Hawthorne and told him, "I was going to put him over my knee and whoop him like the kid he was." When the state inquired

why Cooperwood needed his bat, he replied, "It's called a weapon. It's called protection. I don't know what that man [was] about to pull up with in his hand. * * * I'm not a gun toter, never been a gun toter. I'm a fighter. I'm a brawler. That's what I do. He came with the gun. I came for fisticuffs. He came to shoot. I came to fight." Cooperwood admitted that he was "highly upset" and was "expecting a fight" with Hawthorne. Cooperwood further admitted that he told Hawthorne that he (Cooperwood) was going to "kick his a**" and "I came out here to beat you up, pretty much, but you bring a gun, like I said before, I came to fight, I'm a fighter."

{¶29} The trial court failed to take the witnesses' testimony into consideration in determining whether to instruct on the theory of self-defense. The state contends that the trial court did not commit plain error because Hawthorne never requested a jury instruction on self-defense and did not object to the fact that the trial court indicated it would not give the instruction.

{¶30} It is clear from the record, however, and admitted to by the state, that the defense's theory at trial was one of self-defense. The state actually requested a curative instruction be given to the jury to explain why the court was not instructing the jury on self-defense. During this oral request, the state noted that the defense had introduced its theory of self-defense during opening arguments.

{¶31} The state claims in its supplemental brief that the defense changed its strategy at some point when Hawthorne decided not to testify. But, as counsel told the court in response to the state's request, the defense did not introduce its theory of

self-defense in opening arguments based on its belief that Hawthorne would testify, but rather raised it "assuming the other lady would come in" to testify. Once the trial court erroneously told Hawthorne he had to testify in order to raise the defense of self-defense, the defense's entire theory of the case was essentially hamstrung. While we acknowledge that part of the defense's problem was due to the subpoenaed witness failing to appear, this fact does not negate that the court erred in telling Hawthorne he had to testify in order to claim self-defense and in failing to consider other witness testimony as it related to the defendant's self-defense claim.

{¶32} Because the trial court failed to take witness testimony into consideration based on its erroneous assumption that a defendant must testify in order to claim the defense of self-defense and did not give a jury instruction based on that assumption, we find that the court's error prejudiced Hawthorne and prevented him from receiving a fair trial.

{¶33} The dissent contends that the trial court's incorrect statement of law had no impact on the scope of evidence introduced at trial. That may be, but it had an impact on what the court itself considered when it decided not to instruct on self-defense. The court refused to give the self-defense instruction not because it did not believe that the testimony presented failed to support the instruction. The court refused to give the instruction because the defendant did not testify. This point is highlighted in the court's denial of the defense's request to instruct on aggravated assault. During the discussion on this point, the court considered the testimony of the state's witnesses. The same

cannot be said for its decision not to instruct on self-defense.

{¶34} The first assignment of error is sustained. Because we sustain the first assignment of error as to Hawthorne's argument on self-defense and reverse and remand the case based on this argument, his other contention under this assignment of error — that the court erred in denying his request to instruct the jury on aggravated assault — is moot. *See* App.R. 12(A)(1)(C).

{¶35} Likewise, based on the outcome of the first assignment of error, the second assignment of error in which Hawthorne claims he received ineffective assistance of counsel, and the third assignment of error, claiming prosecutorial misconduct, are also moot.

{¶36} In the fourth assignment of error, Hawthorne contends that the trial court erred in joining his two cases for trial. In Case No. CR-16-603041-A, Hawthorne was convicted of two counts of felonious assault, one count with one- and three-year firearm specifications. In Case No. CR-16-603867-A, Hawthorne was acquitted of having weapons while under disability. Thus, because he was acquitted of having weapons while under disability and we are reversing his felonious assault convictions, this assignment of error is likewise moot.

{¶37} Judgment reversed and case remanded for proceedings consistent with this opinion.

It is ordered that appellant recover of appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

KATHLEEN ANN KEOUGH, P.J., CONCURS;
EILEEN T. GALLAGHER, J., DISSENTS WITH
SEPARATE OPINION

EILEEN T. GALLAGHER, J., DISSENTING:

**{¶38}** I respectfully dissent from the majority's determination that the trial court erred to the prejudice of Hawthorne when it informed him that he had to testify in order to advance a claim of self-defense. I agree that the trial court erroneously instructed Hawthorne that he would have to testify in order to claim self-defense. However, under the circumstances of this case, I believe we are required to review the testimony presented at trial in an effort to determine whether the trial court's misstatement of law was harmless.

**{¶39}** In this case, Hawthorne exercised his right to not testify at trial despite the trial court's misstatement of law. In addition, the record reflects that defense counsel rested without presenting any witnesses. Significantly, there is nothing in the record to suggest that the trial court's misstatement of law impacted or altered the witnesses or

evidence defense counsel planned on presenting at trial. Accordingly, I find no basis to remand the matter where there is no indication that any new testimony or evidence would be introduced at a new trial. In my view, this court has the necessary information to determine whether the evidence supported a self-defense instruction. The trial court's incorrect statement of law had no impact on the scope of the evidence introduced at trial and reversing on these grounds merely delays appellate review for a later date.

{¶40} For the purposes of clarity, I note that if for example, Hawthorne would have testified on his own behalf based on the trial court's misstatement of law, I believe reversible error would have existed. However, that did not occur in this case.

{¶41} Based on the forgoing, this court is obligated to review the state's evidence in order to determine whether Hawthorne could satisfy his burden of proving self-defense. If the evidence does not support the instruction, the trial court's misstatement of law would be harmless and a new trial would not be required.