[Cite as *State v. Amey*, 2018-Ohio-4207.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105847**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**RICHARD R. AMEY**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-604041-A

**BEFORE:** S. Gallagher, J., Kilbane, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEY FOR APPELLANT**

John T. Castele
The Rockefeller Building, Suite 1310
614 W. Superior Avenue
Cleveland, Ohio  44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By:  Maxwell Martin
       Daniel T. Van
Assistant Prosecuting Attorney
Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio  44113

ON RECONSIDERATION:[1]

SEAN C. GALLAGHER, J.:

**{¶1}** Richard Amey appeals his conviction for voluntary manslaughter, which included a three-year firearm specification. For the following reasons, we affirm.

**{¶2}** Before the shooting that formed the basis of the conviction, Amey was attacked by the victim, La'Dale Davis. The fight began when Amey accompanied Janice Gresham, Davis's former girlfriend, through her apartment complex. Davis believed that Amey was in a romantic relationship with Gresham. Davis tackled and began repeatedly punching Amey. With some difficulty, security broke up the one-sided fight. Amey and Gresham separately left the scene, but it is undisputed that Amey's injuries were not severe enough to warrant any medical intervention.

**{¶3}** Sometime later that same evening, Amey again met up with Gresham. Amey, however, had taken the opportunity to arm himself with an illegally possessed and carried firearm. Amey claimed he intended to escort Gersham to her apartment to get some personal belongings so she could stay at a hotel.

**{¶4}** In the second altercation, Davis assaulted Gersham outside of her apartment as she attempted to descend the steps to leave. It is undisputed that Amey did not attempt to intervene in the second attack on Gersham, who managed to get inside the apartment and shut the door. Immediately after the door was closed, Gersham heard two shots being fired. Amey told police officers that in the fleeting moment between Gersham's successful escape and the shots being fired, Davis was downstairs blocking Amey's exit and was coming up toward Amey when the shooting

---

[1] The original announcement of decision, *State v. Amey*, 8th Dist. Cuyahoga No. 105847, 2018-Ohio-2061, released May 24, 2018, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

started. Gersham testified, however, that Amey was downstairs and Davis was the one upstairs, giving Amey a path to retreat from Davis once Gersham was in the safety of her apartment. The coroner corroborated Gersham's account with the angle of the bullet trajectory.

{¶5} When Gersham exited the apartment two or three minutes later, she observed Davis lying at the bottom of the stairs. Amey had fled the scene and discarded the firearm in the sewer. Amey told police officers that during the second fight, Davis said he would kill Amey. There is no evidence establishing whether that statement, if true, was hyperbole or a prediction, but it is undisputed that Davis was unarmed and that Amey's injuries from either altercation were not severe enough to warrant any medical attention. Police officers documented bite marks Amey claims to have been caused by Davis.

{¶6} Amey was charged with murder, felony murder, felonious assault, voluntary manslaughter, and having a weapon while under disability, along with associated firearm specifications. After a bench trial, Amey was acquitted of all but the voluntary manslaughter, the attached three-year firearm specification, and two counts of having a weapon while under disability, for which the sentences were imposed to be concurrently served with the voluntary manslaughter sentence. The trial court sentenced Amey to an aggregate prison term of ten years — seven years on the underlying felony and three years on the gun specification to be served consecutive to the underlying sentence as statutorily required.

{¶7} In this appeal, Amey challenges the sufficiency of the evidence and, in the alternative, claims his conviction is against the manifest weight of the evidence. As part of the sufficiency analysis, Amey also claims that the trial court's acquittal of the felonious assault and felony murder counts is inconsistent with the finding of guilt on the voluntary manslaughter count.

**{¶8}** A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing a sufficiency challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶9}** R.C. 2903.03(A) provides that "[no] person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the defendant into using deadly force, shall knowingly cause the death of another * * *." The "sudden passion and/or a fit of rage" component is a "mitigating circumstance" that if proven by the defendant, lessens the severity of the criminal conduct. *State v. Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, ¶ 29. "While the state must prove the elements of the offense beyond a reasonable doubt," in this case that the defendant knowingly caused the death of another, "the defendant bears the burden of proving the existence of one or both of the mitigating circumstances by a preponderance of the evidence" in order to mitigate his culpability from the greater offense to the inferior one. *Id.*, citing *State v. Rhodes*, 63 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992), fn 2.

**{¶10}** Amey contends there is no evidence supporting either of the mitigating circumstances because Amey never claimed to have acted under a sudden passion or in a fit of sudden rage.

**{¶11}** Generally, if a defendant is not charged with murder or aggravated murder but instead is on trial for voluntary manslaughter, "neither party is required to establish either of the mitigating circumstances." *Rhodes* at 618. In that situation, it is presumed, for the benefit of the defendant, that one or both of the mitigating circumstances exists, solely as a result of the prosecutorial decision to

try the defendant on the charge of voluntary manslaughter. *Id.* It necessarily follows that the "prosecution needs to prove, beyond a reasonable doubt, only that the defendant knowingly caused the death of another, and it is not a defense to voluntary manslaughter that neither party is able to demonstrate the existence of a mitigating circumstance." *Id.*, citing *State v. Calhoun*, 10 Ohio App.3d 23, 460 N.E.2d 294 (2d Dist.1983).

**{¶12}** In this case, however, Amey was charged with both murder and voluntary manslaughter. This complicates the analysis. According to the First District, in such a situation, the trier of fact must consider whether the defendant satisfied his burden to produce the evidence demonstrating the existence of the mitigating circumstances within the voluntary-manslaughter statute. *State v. Griffin*, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921, ¶ 17 (1st Dist.). "Because the state chose to charge [the defendant] with both offenses, the trial court could not have presumed the existence of the mitigating circumstances." *Id.* As additionally recognized, when the trier of fact considers the inferior offense of voluntary manslaughter, the law requires the trier of fact to determine whether the defendant was guilty of either murder or voluntary manslaughter. *Id.* at ¶ 13.

> The Ohio Jury Instructions recommend that a jury be told that if it finds a defendant has committed murder, but also finds that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, "then you must find the defendant not guilty of murder and guilty of voluntary manslaughter."

*Id.*, quoting *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006, ¶ 29. Thus, if the trier of fact determines that the defendant is guilty of voluntary manslaughter, it must enter a verdict of not guilty on any murder charges.

**{¶13}** Amey failed to present evidence in support of the mitigating circumstances under the voluntary manslaughter statute. Instead, Amey pinned his acquittal on self-defense. In this regard,

the trial court's verdict of guilt on the voluntary manslaughter charge benefitted Amey; it lessened the severity of the crimes of which he was found guilty without burdening Amey with having to demonstrate the existence of the mitigating factors. *Rhodes*, 63 Ohio St.3d at 618, 590 N.E.2d 261. Amey's failure to produce evidence in support of the inferior offense cannot then be used as a sword to undue his conviction.

{¶14} Further, with respect to the sufficiency of the evidence, Amey claims to have acted in self-defense. He therefore concedes that he knowingly killed Davis; it is Amey's belief that killing Davis was legally justified. Thus, there is sufficient evidence supporting the elements of the voluntary manslaughter charge for which the state bore the burden at trial. *State v. Chandler*, 8th Dist. Cuyahoga No. 105246, 2017-Ohio-8573, ¶ 19, citing *State v. Bandy*, 1st Dist. Hamilton No. C-160402, 2017-Ohio-5593, ¶ 46, and *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 38. The state bears no burden in proving that Amey was provoked by sudden passion or acted in a fit of rage. That element is in mitigation of a greater offense for which Amey bears the burden of proof. *Henry*, 8th Dist. Cuyahoga No. 102634, 2016-Ohio-692, at ¶ 29, citing *Rhodes* at 617, fn 2.

{¶15} Recognizing the aforementioned, Amey also challenges the conviction based on the inconsistent verdict rendered by the trial court. In entering the verdicts, the court concluded that there was no testimony demonstrating that Amey's acts, in obtaining the weapon as part of the intent to cause physical harm to the victim, were committed knowingly for the purpose of the felonious assault, but that there was evidence demonstrating that Amey knowingly caused the death of the victim. Although the trial court spoke in terms of "knowingly," it was essentially combining the premeditation component of the aggravated murder charge with the felony murder charge — a defendant does not need to knowingly obtain the weapon used to commit felonious assault. In

discussing its finding that Amey did not act knowingly for the purposes of the felonious assault, the predicate offense underlying the felony murder charge, the trial court was determining whether Amey knowingly obtained the firearm to murder the victim. Nevertheless, even if the statements created ambiguity, the trial court removed all doubt by expressly concluding that Amey knowingly shot the victim for the purposes of the voluntary manslaughter conviction, a fact of consequence also demonstrated through Amey's claim of self-defense.

{¶16} Notwithstanding, as the Ohio Supreme Court has continually maintained, "a verdict that convicts a defendant of one crime and acquits him of another, when the first crime requires proof of the second, may not be disturbed merely because the two findings are irreconcilable. 'Consistency in the verdict is not necessary.'" *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 81-82, quoting *United States v. Powell*, 469 U.S. 57, 62, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), and *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Each count of an indictment is considered a separate indictment. *Id.* It must be remembered that inconsistent verdicts should not "'necessarily be interpreted as a windfall for the Government at the defendant's expense.'" *Id.*, quoting *Powell* at 62. "It is equally possible that the [trier of fact], convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.,* citing *Powell.* Ohio has "long recognized" this principle. *Id.*, citing *State v. McNicol*, 143 Ohio St. 39, 47, 53 N.E.2d 808 (1944), citing *Griffin v. State*, 18 Ohio St. 438 (1868); *State v. Hicks*, 43 Ohio St.3d 72, 78, 538 N.E.2d 1030 (1989); *State v. Taylor*, 8th Dist. Cuyahoga No. 89629, 2008-Ohio-1626, ¶ 10; *State v. Smathers,* 9th Dist. Summit No. 19945, 2000 Ohio App. LEXIS 5981, 8 (Dec. 10, 2000). Even if the trial court's verdicts upon separate counts were inconsistent, there is no basis to reverse Amey's conviction for voluntary manslaughter.

{¶17} Amey relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), in support of his inconsistent-verdicts argument. In that case, the Ohio Supreme Court held that an acquittal on a gun specification but the finding of guilt on the principal offense of voluntary manslaughter for causing the death of a victim with the firearm were inconsistent, and therefore, the voluntary manslaughter conviction was reversed. There was no legal authority or analysis in support of the conclusion reached in that case. *Koss*, in fact, contradicted the Ohio Supreme Court's earlier conclusion on inconsistency between the principal charge and the associated specification. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040, paragraph 3 of the syllabus (1976) ("Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.").

{¶18} Although some courts valued *Koss* based on recency, that support has faded. *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 73-75, citing *Perryman* (noting the conflict created by *Koss* and deeming the decision in *Koss* to be of limited value); *see also State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 43; *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 24. It may be time to consider *Koss* as nothing more than an outlier; however, any such conclusion would be outside the scope of this appeal.

{¶19} In this case, the issue raised addresses the apparent inconsistency between verdicts on separate counts (which contrasts with the issue in *Koss* resolving apparent inconsistencies between a specification and its underlying count), and the Ohio Supreme Court has continually adhered to *Powell* on that issue — inconsistent verdicts as between independent counts do not create reversible error. *Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, at ¶ 81-82. At best, *Koss* is inapplicable to the arguments advanced.

{¶20} The first assignment of error is overruled. Accordingly, all that is left is to determine whether the trial court's rejection of Amey's claim of self-defense is against the weight of the evidence.

{¶21} When reviewing a claim challenging the manifest weight of the evidence, the court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 1997-Ohio-52, 678 N.E.2d 541. Generally, determinations of credibility and weight of the testimony are reserved for the trier of fact. *State v. Lipkins*, 10th Dist. Franklin No. 16AP-616, 2017-Ohio-4085, ¶ 36, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶22} In other words, the "jury may take note of the inconsistencies and resolve them accordingly, 'believing all, part, or none of a witness's testimony.'" *Id.*, quoting *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

> An appellate court considering a manifest weight challenge "may not merely substitute its views for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."

*Id.* at ¶ 37, quoting *State v. Harris*, 10th Dist. Franklin No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. A conviction will only be reversed as being against the manifest weight of the evidence in the most "'exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387 and *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶23}** Amey claims the trier of fact lost its way in finding him guilty of voluntary manslaughter because Amey shot the victim in self-defense. The trial court did not find Amey credible. Essentially, Amey is asking this court to believe his version of events because he is the only living person who was present during the shooting. "[A] conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *Lipkins* at ¶ 39, citing *State v. Gale*, 10th Dist. Franklin No. 05AP-708, 2006-Ohio-1523, ¶ 19. The trial court was in the best position to adjudge Amey's credibility with respect to whether he acted in self-defense when shooting Davis in the hallway.

**{¶24}** Further, a defendant, having willingly advanced toward a volatile situation in which he already thought the other would harm him, cannot rely on the affirmative defense of self-defense when the others actually do that which the defendant feared. *State v. Sekic*, 8th Dist. Cuyahoga No. 95633, 2011-Ohio-3978, ¶ 15. In order to prevail on the issue of self-defense, the defendant bears the burden of proving that he was not at fault in starting the affray, that he had a bona fide belief that he faced imminent danger of death or great bodily harm, that his only means of escape was the use of such force, and that he violated no duty to retreat or avoid the danger. *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

**{¶25}** In *Sekic*, for example, a victim and several others with a history of animosity with the defendant, cornered the defendant at a convenience store. *Id.* at ¶ 3. The defendant feared for his safety. *Id.* The defendant then called his relatives, and the group confronted the victim at his home. *Id.* at ¶ 5. A fight ensued. The defendant, believing that the victim was reaching for a weapon, picked up a ceramic planter or ashtray to wield as a weapon. *Id.* The defendant struck the victim in the face causing significant injury. *Id.* The trial court's decision to omit a jury instruction on self-defense was affirmed. *Id.* at ¶ 12. It was concluded that the defendant created the situation by

confronting the victim at his home after the earlier incident in which the defendant feared for his safety had concluded without incident. *Id.* at ¶ 14, citing *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002-Ohio-415 (no claim for self-defense will lie when a defendant provokes the assault or voluntarily enters an encounter).

**{¶26}** Although Amey did not solicit others to support his confrontation of Davis as the defendant in *Sekic*, Amey did retrieve a weapon for that same purpose. Amey feared Davis would attack him, and when that second attack manifested, Amey claimed that Davis said he would kill him. Even if that is believed to be more than mere hyperbole, Amey failed to demonstrate any other element of self-defense. Amey, after having time to reflect, armed himself in preparation for Davis's continued belligerence. *Sekic*. A defendant may not claim self-defense if he has a reasonable means to avoid the confrontation. *State v. Melchior*, 56 Ohio St.2d 15, 20, 381 N.E.2d 195 (1978); *Sekic*; *Nichols*. Not only could Amey have avoided the situation altogether by not returning with a weapon to confront Davis, but after Gersham was safely in her apartment, Amey had a reasonable means of escape. Amey actually impeded Davis's exit. In addition, a defendant cannot base the claim of self-defense on an attack that occurred hours earlier and there is no evidence that Davis attacked Amey in the hallway immediately before being killed. *Id.*; *Chandler*, 8th Dist. Cuyahoga No. 105246, 2017-Ohio-8573, at ¶ 17 (it was undisputed that the defendant's wife was no longer in danger after an earlier altercation concluded without incident for the purposes of claiming self-defense of another). As already mentioned, Amey's statements about the manner in which the shooting occurred were called into doubt by Gersham's trial statements and the coroner's evidence of bullet trajectory.

**{¶27}** Although Davis's actions that evening were intolerable, Davis's assault was not grounds for an execution. Considering the fact that Amey voluntarily armed himself in order to confront Davis, after the earlier altercation was limited to fists, we cannot conclude that this is the

exceptional case in which the trier of fact lost its way and created a manifest injustice warranting a new trial. The second assignment of error is overruled.

{¶28} The conviction is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

SEAN C. GALLAGHER, JUDGE

MARY EILEEN KILBANE, P.J., CONCURS;
ANITA LASTER MAYS, J., DISSENTS WITH SEPARATE OPINION

ANITA LASTER MAYS, J., DISSENTING:

{¶29} I respectfully dissent from the majority's opinion affirming the trial court's decision to convict Amey of voluntary manslaughter. I would find that this case is an exceptional case in which the evidence weighs heavily against the conviction.

{¶30} Amey argues that the trial court's decision to convict him of voluntary manslaughter was against the manifest weight of the evidence, and the trial court's rejection of his claim for self-defense was in error. I agree.

**{¶31}** I would find that the state's argument that Amey shot Davis in retaliation for having fought Davis earlier and in an effort to keep Davis from being involved with Gresham was misplaced. I would find that the record reveals that Amey's actions were in self-defense.

> Self-defense is an affirmative defense, and thus, the accused has the burden to prove it by a preponderance of the evidence. *State v. Smith*, 10th Dist. Franklin No. 04AP-189, 2004-Ohio-6608, ¶ 16. To establish self-defense through the use of deadly force, defendants must prove (1) they were not at fault in creating the situation giving rise to the affray, (2) they had a bona fide belief that they were in imminent danger of death or great bodily harm and their only means of escape from such danger was the use of such force, and (3) they must not have violated any duty to retreat or avoid the danger. *State v. Robbins*, 58 Ohio St.2d 74, 388 N.E.2d 755 (1979), paragraph two of the syllabus.

*State v. Walker*, 8th Dist. Cuyahoga No. 97648, 2012-Ohio-4274, ¶ 56.

**{¶32}** While rendering the verdict, the trial court stated,

[m]oreover, the actions of La'Dale Davis that evening, starting with the confrontation that led to the earlier fight, but more importantly, the renewed and unexpected confrontation in the hallway and Davis'[s] aggressive behavior towards both the defendant and Janice Gresham is sufficient evidence to establish beyond a reasonable doubt that the defendant acted as the result of — as a direct result of sudden passion brought on by serious provocation by the victim that was reasonably sufficient to cause him to shoot.

(Tr. 412.)

**{¶33}** Reviewing the record, witnesses testified that Davis was known to be violent. Davis's own sister testified that Davis was talking crazy and that she felt compelled to leave her grandmother's home to search for him. Shatwoyne Range, Gresham's neighbor and Davis's friend, testified that she could not calm Davis down after the initial fight and that his anger elevated while speaking with Gresham on the phone. Gresham testified that when she returned home, Davis was

waiting for her at her apartment. Gresham went on to state that she and Davis argued and that her mother barricaded the door to keep Davis from entering. Once her mother allowed Gresham and Davis to enter, Davis began arguing with the mother. All the while Amey remained outside of the apartment calm, telling Gresham to give Davis his things. When Davis and Gresham exited the apartment, Davis punched Gresham in the side of the head, causing her to fall on the stairs. Amey did not get involved. Gresham ran back in to her apartment, screaming, leaving Amey and Davis outside. Gresham testified that shortly thereafter, she heard two gunshots. Gresham and her mother exited the apartment and saw Davis lying on the ground, and Amey was gone.

{¶34} In order to find Amey guilty of voluntary murder, the trial court must be able to reasonably find that Davis had seriously provoked Amey and that the serious provocation was reasonably sufficient to have incited him to use deadly force. *See State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 75.

{¶35} My analysis reveals that the trial court expressed that Amey was not at fault in creating the situation giving rise to the affray by stating, "the actions of La'Dale Davis that evening, starting with the confrontation that led to the earlier fight, but more importantly, the renewed and unexpected confrontation in the hallway and Davis's aggressive behavior towards both the defendant and Janice Gresham" is what caused the situation. (Tr. 412.)

{¶36} Second, the trial court believed that Amey had a bona fide belief that he was in imminent danger of death or great bodily harm, and that his only means of escape from such danger was the use of such force. The trial court stated that Amey's actions were "as a direct result of sudden passion brought on by serious provocation by the victim that was reasonably sufficient to cause him to shoot." (Tr. 412.) Given the fact that Davis brutally beat Amey just hours before; it

took two officers to get Davis off of Amey; and that the use of pepper spray on Davis did not deter Davis from beating Amey, I find that these facts support self-defense and not sudden passion.

{¶37} Finally, the police officer who interviewed Amey testified that Amey stated that Davis came after him and grabbed him. As they struggled, Amey felt as if the only way to get away from Davis was to shoot him. Given the nature of the brutal beating earlier, it is reasonable to believe that Amey would feel as if his life were in jeopardy.

{¶38} Accordingly, I would find that the trial court's rejection of the defense's claim of self-defense was error when the evidence supported such a claim. While Amey did not testify at his trial, that does not bar him from asserting a self-defense claim. *See*, *e.g.*, *State v. Hawthorne*, 8th Dist. Cuyahoga No. 105121, 2018-Ohio-1180*, ¶* 15, citing *State v. Eichelbrenner*, 1st Dist. Hamilton No. C-110431, 2013-Ohio-1194, ¶ 24. ("A defendant who does not testify is not precluded from requesting an instruction on self-defense if the evidence otherwise supports the defense.").

{¶39} "[S]elf-defense requires that the defendant show evidence of fear, while voluntary manslaughter requires that the defendant show evidence of sudden passion or fit of rage. It must be one or the other." *State v. Loyed*, 8th Dist. Cuyahoga No. 83075, 2004-Ohio-3961, ¶ 14. I would find that the evidence supports Amey's claim of self-defense, and that trial court indirectly acknowledged his claim where the record clearly shows that Amey did not instigate any confrontation with Davis. Amey did not return to the apartment complex in search of Davis. The majority focuses on the fact that Amey had a weapon on his person when he returned. However, the record supports the fact

that Davis was volatile, violent, and attacked both Amey and Gresham. It further supports the fact that Amey did not threaten Davis and remained calm while Davis engaged in verbal and physical confrontations with Gresham.

{¶40} I reject the state's argument that Amey was provoked by sudden passion or sudden fit of rage. I find that, although there is sufficient evidence to convict Amey of voluntary manslaughter, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed under manifest weight.