[Cite as *State v. Bonneau*, 2012-Ohio-3258.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97565**

---

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# PAUL BONNEAU

DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-545066

**BEFORE:** Keough, J., Blackmon, A.J., and Boyle, J.

**RELEASED AND JOURNALIZED:** July 19, 2012

**ATTORNEY FOR APPELLANT**

Thomas E. Conway
75 Public Square, Suite 700
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY: Mark J. Mahoney
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Paul Bonneau, appeals from his convictions for gross sexual imposition and kidnapping. Finding no merit to the appeal, we affirm.

I. Procedural and Factual History

{¶2} Appellant was indicted in an eight-count indictment. Counts 1, 2, and 3 charged gross sexual imposition in violation of R.C. 2907.05(A)(1) against victim M.S.; Count 4 charged the kidnapping of M.S. with a sexual motivation specification in violation of R.C. 2905.01(A)(4). The offenses were alleged to have occurred from June 1, 1993 to September 1, 1993. Counts 5, 6, and 7 of the indictment charged gross sexual imposition in violation of R.C. 2907.05(A)(1) against victim A.F.; Count 4 charged the kidnapping of A.F. with a sexual motivation specification in violation of R.C. 2905.01(A)(4). These offenses were alleged to have occurred from February 1, 2006 to February 28, 2006.

{¶3} Prior to trial, the trial court granted the State's motion to amend the dates of the offenses in Count 1 through 4 to June 1, 1994 to August 31, 1994, and Counts 5 through 8 to February 1, 2005 to February 28, 2005. The trial court denied appellant's "motion for relief from prejudicial joinder."

{¶4} The testimony at trial established that M.S. first met appellant, his wife, Stacey, and their two children when she was 14 years old. M.S. lived across the street

from the Bonneaus and began babysitting for them in May of 1994. Stacey testified that appellant was infatuated with M.S.; according to M.S., he would buy her things like clothes and a pager. He also took her to bars, even though she was only 15 years old, and after she got a job, would pick her up on his motorcycle and give her rides to work.

{¶5} M.S., who was 32 years old at the time of trial, testified that appellant told her that he loved her and wanted to "ride off" on his motorcycle with her some day. Appellant's emotional attraction to M.S. eventually became physical. M.S. testified that the first time appellant became physical with her, he came up to her as she sat in a chair in the Bonneaus' living room, ran his hand up her thigh, and French-kissed her multiple times. M.S. testified that to get out of the situation, she stood up, pushed away, and went into the kitchen with appellant's wife. M.S. testified that there were many incidents like this.

{¶6} She testified that another time when she was at the Bonneau home, appellant came over, pushed her on the couch, grabbed her hands and held them behind her head, and then French-kissed and "dry humped" her; M.S. stated that she could feel appellant's erection while he was doing this. M.S. said that she tried to get away and eventually rolled in a way that forced appellant to roll off her. She testified that appellant's friends, who were in the room during this incident, watched and laughed.

{¶7} M.S. stated that another time, she, appellant, and appellant's wife were riding in the car. She was sitting in the back seat next to the baby in the car seat; appellant was driving and his wife was sitting in the front passenger seat. M.S. testified that when the

baby dropped a toy, appellant turned around to pick it up, and "just ran his hand all up [her] leg up to [her] thigh."

{¶8} M.S. testified that another time appellant rubbed her legs as she rode on his motorcycle with him, and when they got off the motorcyle, he grabbed her "inappropriately in the butt." She testified that she remembered other incidents when appellant would take her hand and force her to rub his genital area while he would rub her.

{¶9} M.S. testified that one day Bonneau handed her a letter in which he asked her to lose her virginity to him. M.S. was uncomfortable telling her parents what had been happening, so she left the letter where her parents would find it. After M.S.'s mother found the letter, there was no more contact between appellant and M.S.

{¶10} A.F., who was 22 years old at trial, testified that her family, who lived on the same street in Cleveland as the Bonneaus, moved to Columbia Station when she was 14 years old. The families stayed in contact, and A.F. would sometimes babysit for the Bonneaus; she would usually spend the night and her mother would pick her up the next morning.

{¶11} A.F. testified that she was babysitting for the Bonneaus one night in February 2005 when she was 15 years old. Appellant and Stacey came home; Stacey checked on the children and then went to bed.

{¶12} A.F. testified that appellant put on some music, gave her a beer and later Jagermeister, and then started getting "flirty" and "grabby" with her. According to A.F.,

he grabbed her buttocks and pinched her thighs. A.F. said that she went upstairs to go to the bathroom and appellant followed her. When she came out of the bathroom, he grabbed her and pushed her down on a wooden chest. A.F. testified that appellant put his hands on her legs, spread her legs open, and then bit her in her vaginal area. A.F. stated that she pushed appellant out of the way and ran down the stairs. According to A.F., as she was running down the stairs, appellant made comments about her virginity and told her that he wanted to be her "first."

{¶13} Appellant's nephew, Dale Leonard, who was living with the Bonneaus, testified that he was in the basement when he heard A.F. yelling "get off me." He walked upstairs and saw appellant grabbing A.F.'s buttocks. Leonard told appellant to stop what he was doing and pulled him away from A.F., who then ran down the stairs. According to A.F., appellant followed her into the family room and, as he sat on the couch, began touching his penis and looking at her. A.F. stated that Dale came in the room and told appellant to go upstairs, which he finally did.

{¶14} A.F.'s mother picked her up the next morning; about a month after the incident, A.F. finally told her mother what had happened. A.F.'s mother testified that the two families met and appellant apologized, although he never specified exactly what he was sorry for. The families agreed that in lieu of reporting the incident to the police, appellant would attend counseling. The families did not stay in contact after this meeting.

**{¶15}** Stacey Bonneau testified that after this incident, her marriage to appellant fell apart. In May 2010, in an effort to find character witnesses for a custody hearing regarding the couple's two daughters, she contacted A.F. and her mother, who told Stacey the extent of what had happened to A.F. Stacey convinced A.F. to report the incident to the police.

**{¶16}** Detective Kenneth Vagase testified that during his investigation of the incident, Stacey told him about the incident involving M.S. Detective Vagase contacted M.S., who told him what had happened to her.

**{¶17}** The jury found appellant guilty of Counts 1, 2, 3, and 4, which charged gross sexual imposition and kidnapping relating to M.S., and not guilty of Counts 5, 6, 7, and 8, the counts relating to the incident with A.F. The trial court sentenced appellant to three years incarceration and classified him as a sexually oriented offender.[1] This appeal followed.

## II. Analysis

### A. Joinder

**{¶18}** In his first assignment of error, appellant contends that the trial court erred in denying his "motion for relief from prejudicial joinder." Appellant contends that this

---

[1]The original sentencing was held on October 17, 2011; appellant filed a notice of appeal on November 16, 2011. On December 1, 2011, the trial court held another sentencing hearing and resentenced appellant. However, the trial court was without jurisdiction to resentence appellant after the notice of appeal was filed and, therefore, the new sentencing judgment is void. The resentencing does not affect our consideration of appellant's appeal, however, because none of the assignments of error relate to sentencing.

case involved separate victims and separate incidents separated by almost 11 years. He asserts that he was prejudiced by the joinder of the counts relating to the two victims because "there was no way that a jury could reasonably segregate the respective evidence from the two separate sets of allegations."

{¶19} Multiple offenses may be charged in the same indictment "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). Generally, the law favors joining multiple offenses of the same or similar character in a single trial, unless joinder would prejudice the defendant. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); Crim.R. 14. The defendant bears the burden of proving prejudice and that the trial court abused its discretion in denying severance. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 29.

{¶20} Joinder was proper in this case because the crimes were related in character and manner. And appellant has failed to demonstrate any prejudice by the joinder. A defendant is not prejudiced by joinder if simple and direct evidence of each of the crimes joined at trial exists, such that a jury is capable of segregating the proof required for each offense, or if evidence of one offense would be admissible at a separate trial of the other offense as "other acts" evidence under Evid.R. 404(B). *Brinkley* at ¶ 30.

**{¶21}** Evid.R. 404(B) permits the admission of "other acts" evidence if the evidence is "related to and shares common features with the crime in questions," as long as it is used for purposes other than proving that the accused acted in conformity with a particular character trait. *State v. Lowe*, 69 Ohio St.3d 527, 1994-Ohio-345, 634 N.E.2d 616, paragraph one of the syllabus. In this regard, appellant contends that the facts relating to the separate incidents with the alleged victims are too unrelated in time to support their joinder.

**{¶22}** Assuming, without deciding, that the "other acts" evidence would have been inadmissible on this basis, we find that the evidence as to each victim was simple, direct, and capable of being segregated. There is no indication from the record that the jury confused the evidence as to the different counts or that the jury was influenced by the cumulative effect of the joinder. In fact, the jury's not guilty verdicts as to the counts relating to A.F. and its guilty verdicts as to the counts relating to M.S. demonstrate that the jury considered each victim separately. Contrary to appellant's argument, the jury was able to separate the evidence relating to each victim to reach its verdict. Appellant's first assignment of error is therefore overruled.

B.    Sufficiency and Manifest Weight of the Evidence

**{¶23}** In his second and third assignments of error, appellant contends that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶24}** The test for sufficiency requires a determination of whether the prosecution met its burden of production at trial. *State v. Bowden*, 8th Dist. No. 92266, 2009-Ohio-3598, ¶ 12. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

**{¶25}** A manifest weight challenge, on the other hand, questions whether the prosecution met its burden of persuasion. *State v. Ponce*, 8th Dist. No. 91329, 2010-Ohio-1741, ¶ 17, citing *State v. Thomas*, 70 Ohio St.2d 79, 80, 434 N.E.2d 1356 (1982). A reviewing court may reverse the judgment of conviction if it appears that the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. A finding that a conviction was supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *Id.*

**{¶26}** Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1) and kidnapping in violation of R.C. 2905.01(A)(4). R.C. 2907.05(A)(1), governing gross sexual imposition, provides that "[n]o person shall have sexual contact with another, not the spouse of the offender * * * when * * * the offender purposely

compels the other person * * * to submit by force or threat of force." R.C. 2905.01(A)(4), regarding kidnapping with a sexual motivation specification, provides that "[n]o person, by force * * * shall * * * restrain the liberty of the other person * * * to engage in sexual activity * * * with the victim against the victim's will."

{¶27} Appellant argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence because there was no evidence that he purposely compelled M.S. to submit by force or threat of force and that, in actuality, the relationship was consensual. His argument is without merit.

{¶28} M.S. testified to multiple incidents when appellant forced her to submit to his advances against her will. She testified that in one incident, appellant pushed her on the couch, French-kissed her, and "dry humped" her as he was holding her hands behind her head. M.S. specifically testifed that during this incident, she "was trying to get away" and finally managed to roll in a way that forced appellant to roll off her. She testified that in another incident when appellant approached her and kissed her, she had to push him away in order to get out of the situation. And she testified that there were many incidents such as this one.

{¶29} In light of this testimony, the jury did not lose its way in concluding that appellant compelled M.S. by force to submit to his sexual advances, and that he restrained her by force to engage in sexual activity with her against her will. Appellant's argument that the relationship was consensual is specious. Although there was testimony that appellant bought M.S. things and gave her motorcycle rides, M.S. specifically testified

that appellant's advances were unwanted but because she was only 15 years old, while appellant was an adult, she did not know how to simply say no.

**{¶30}** Appellant also argues that the jury lost its way in convicting him because of M.S.'s statement on cross-examination that although she was initially reluctant to prosecute appellant, "it came to [her] knowledge that many other young girls had been violated and hurt and [she] knew that [she] had to come forward to prevent it from ever happening again." Appellant contends that although the court immediately informed the jury the statement was stricken from the record, he was unfairly prejudiced by M.S.'s mention of other victims.

**{¶31}** But appellant again fails to demonstrate any prejudice. The trial judge immediately issued a curative instruction to the jury after M.S.'s remark. The jury can be presumed to have followed the instructions, including curative instructions, given by a trial judge. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93. Furthermore, the jury's verdict finding appellant guilty of the charges relating to M.S. but not guilty of the charges relating to A.F., demonstrates that the jury disregarded M.S.'s comment about other victims, as instructed.

**{¶32}** On this record, the jury did not lose its way and create a manifest miscarriage of justice in finding appellant guilty of gross sexual imposition and kidnapping relating to M.S. His convictions are not against the manifest weight of the evidence; thus, they are supported by sufficient evidence. Appellant's second and third assignments of error are therefore overruled.

**{¶33}** Affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

KATHLEEN ANN KEOUGH, JUDGE

PATRICIA A. BLACKMON, A.J., and
MARY J. BOYLE, J., CONCUR