[Cite as *State v. Wiley*, 2022-Ohio-2131.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                    :

    Plaintiff-Appellee,              :

                                         No. 110753

    v.                                           :

DAJUAN WILEY,                                    :

    Defendant-Appellant.             :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART; REVERSED IN PART;
                  AND REMANDED
**RELEASED AND JOURNALIZED:** June 23, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-649082-A and CR-20-649120-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Brian D. Kraft, Assistant Prosecuting
Attorney, *for appellee.*

Buckeye Law Office and P. Andrew Baker, *for appellant.*

KATHLEEN ANN KEOUGH, P.J.:

{¶ 1} Defendant-appellant, DaJuan Wiley ("Wiley") appeals from the trial

court's judgment, rendered after a jury trial, finding him guilty of murder, felonious

assault, voluntary manslaughter, drug trafficking, drug possession, having weapons

while under disability, and possessing criminal tools, and sentencing him to an aggregate term of 21 and one-half years' incarceration. We affirm in part, reverse in part, and remand for a new trial on Counts 1, 2, and 3 (murder, felonious assault, and voluntary manslaughter) in CR-20-649082.

## I.   Background

{¶ 2}   Wiley was indicted in Cuyahoga C.P. No. CR-20-649082 as follows: Count 1, murder in violation of R.C. 2903.02(B); Count 2, felonious assault in violation of R.C. 2903.11(A)(1); Count 3, voluntary manslaughter in violation of R.C. 2903.03(A); Count 4, involuntary manslaughter in violation of R.C. 2903.04(A); and Count 5, drug trafficking in violation of R.C. 2925.03(A). The charges arose from the shooting and death of Antoine Reese ("Antoine") on September 17, 2018. Counts 1 through 4 contained one- and three-year firearm specifications.

{¶ 3}   After a search warrant was executed at Wiley's residence on February 25, 2020, he was charged in Cuyahoga C.P. No. CR-20-649120 with the following offenses: Counts 1, 3, and 5, drug trafficking in violation of R.C. 2925.03(A)(2); Counts 2, 4, 6, and 7, drug possession in violation of R.C. 2925.11(A); Counts 8 and 9, having weapons while under disability in violation of R.C. 2923.13(A)(2) and (3); and Count 10, possessing criminal tools in violation of R.C. 2923.24(A). The trafficking and drug possession counts contained a one-year firearm specification, the trafficking offenses also contained a schoolyard specification, and all counts contained forfeiture specifications.

{¶ 4} Wiley pleaded not guilty to all charges. Prior to trial, the trial court granted the state's motion for joinder of the indictments.

{¶ 5} At trial, Antoine's brother, David Jackson, testified that on September 17, 2018, he and Antoine smoked marijuana while they drove around. He said that later that day, Antoine's cousin, Lamont Jackson, texted Antoine and asked him to go to Wiley's bedroom to "confront" Wiley. David testified that Antoine's girlfriend took them to the house where Wiley rented a room, where they met up with Antoine's uncle, Dale Jackson. David said that Lamont let the three men in the house, and they went upstairs to Wiley's bedroom. David said that he sat on the couch in the living room while Antoine and Dale went in the bedroom. He said he heard loud voices, tussling, and a gunshot, after which he fled the scene. He learned the next day that Antoine had been killed.

{¶ 6} Kayla Guthrie testified that she drove Antoine and David to Lamont Jackson's house late in the evening of September 17, 2018. She said Antoine's uncle met them there and the three men went in the house while she waited outside in her car. She said that after approximately five minutes, she heard a single gunshot, after which David and Antoine's uncle came running out of the house. Antoine's uncle got in his car and drove away; David, who Kayla said was "distraught" and "out of breath," got in her car and told her to drive away. She admitted that neither she nor David called the police to report the shooting.

{¶ 7} Rebecca Doehring testified that in September 2018, she and Wiley lived together in an upstairs room they rented from Lamont Jackson. She said that

Wiley was a drug dealer who sold crack cocaine. Doehring said that she knew Antoine because he would often come to the house to smoke weed.

{¶ 8} She testified that at approximately 11 p.m. on September 17, 2018, she and Wiley were in their room when three men burst in. She said that Antoine jumped on her, put a pillow over her face, and tried to suffocate her, while the other two men jumped on Wiley. She said that she heard tussling and then someone said, "Oh s---; go, go, go." The two men fighting with Wiley ran out of the bedroom, followed by Antoine and Wiley. Doehring said she heard a gunshot, after which Wiley came back to the room, found her in the closet, and told her to get out of the house. She said that Wiley jumped out a window and she walked out of the apartment "over Twan's dead body." She said she met up with Wiley several blocks away from the apartment and they went to a friend's house, where they spent the night. Doehring admitted that neither she nor Wiley ever called the police to report the shooting.

{¶ 9} Dr. Erica Armstrong, the forensic pathologist in the Cuyahoga County Medical Examiner's office who performed the autopsy of Antoine's body, testified that Antoine died as the result of a single bullet that entered his left back, exited his chest, and came to rest in his right forearm. Dr. Armstrong said that she recovered a medium caliber bullet from Antoine's right forearm. Curtiss Jones, supervisor of the trace evidence unit in the Cuyahoga County Medical Examiner's Office, testified that the lack of fouling and stippling around the entrance wound on the back of Antoine's tee shirt indicated that he was shot from at least three feet away.

{¶ 10} Doehring testified that in February 2020, she and Wiley lived at 9714 Lorain Avenue with her best friend, Scott, and that Wiley sold heroin and cocaine from the apartment. Cleveland police detective William Salupo testified that as a result of information provided by a confidential informant, he obtained a search warrant in February 2020 for apartment 3 at 9714 Lorain Avenue. Wiley and Doehring were at the apartment when the police executed the warrant on February 25, 2020. Det. Salupo testified that he found a small digital scale, crack pipes, narcotics presumed to be heroin, and a loaded 9 mm handgun in Wiley's backpack in the bedroom of the apartment. Video footage from a body camera worn by one of the officers participating in the search was shown to the jury. (State's exhibit No. 210.) In the footage, Wiley can be seen and heard telling Scott, who arrived on the scene as Wiley was being escorted out of the house after his arrest, that "it's all mine. Everything they find in the house is mine." (Tr. 394.) Det. Salupo testified that his conclusion was that Wiley meant that "anything illegal in the apartment was his." (Tr. 395.) He testified further that the narcotics later tested positive for heroin, fentanyl, and phenethyl-4-ANPP, and the crack pipes tested positive for cocaine residue.

{¶ 11} Cleveland police detective Arthur Echols testified that he investigated Antoine's murder in 2018 and that as a result of his investigation, the Fugitive Task Force began looking for Wiley in October 2018. Det. Echols said that when he learned in February 2020 that Wiley had been arrested and a 9 mm gun had been found in his backpack, he asked the ballistics lab to test the gun to determine if it

was the weapon used to murder Antoine.  Kristen Koeth, a forensic scientist in the Cuyahoga County Regional Forensic Science Laboratory, testified that she compared bullets from the gun recovered during the search of Wiley's apartment with the bullet recovered from Antoine's body and determined that the bullet in Antoine's body was fired from the gun found in Wiley's apartment.

{¶ 12} Det. Echols interviewed Wiley after his arrest in 2020.  A video of the interview was shown to the jury. (State's exhibit No. 211.)  In the interview, Wiley admitted that the gun found in the backpack during the search of his apartment was his weapon.

{¶ 13} Wiley testified in his own defense.  He admitted that he is a drug dealer and that he sold drugs to Antoine during the early evening of September 17, 2018.  He also admitted that he shot Antoine later that night but claimed the shooting was in self-defense.  He said that because the three men who forced their way into his room were maskless, he believed they would kill him and that his "life was on the line."  He said that Antoine's brother was holding a gun when he entered the room but he was able to grab the gun as he fought with the men.  Wiley said that Antoine then told the men to "go, go, go" and they ran out of the room.  Wiley admitted that he chased the men down the hall as they ran away and said that he shot Antoine in an effort to prevent the men from "regrouping" and coming back to cause him more harm.

{¶ 14} On cross-examination, Wiley insisted that the shooting was in self-defense but admitted he told Det. Echols during his interview that after he grabbed

the gun during the fight he "want[ed] blood," "stepped up and handled [his] business," and "was like the Terminator that night." He admitted he also told the detective that his "only regret is that all three of them aren't dead."

{¶ 15} The trial court denied Wiley's Crim.R. 29 motion for acquittal, and the jury found him guilty in CR-20-649082 of murder, felonious assault, voluntary manslaughter, and drug trafficking, with the accompanying firearm specifications, and not guilty of involuntary manslaughter. In CR-20-649120, the jury found Wiley guilty of all charges and specifications except the schoolyard specification. The trial court did not sentence Wiley on the murder count in CR-20-649082. It merged various other offenses and sentenced him to an aggregate prison term of 21 and one-half years. This appeal followed.

## II.  Law and Analysis

### A.  Jury Instructions

{¶ 16} In his first assignment of error, Wiley contends that the trial court erred because it did not instruct the jury regarding the charges in CR-20-649082 that it could not convict him of both murder and voluntary manslaughter for the same killing.

{¶ 17} In Count 1, the state charged that Wiley murdered Antoine while committing or attempting to commit a felonious assault against him. R.C. 2903.02(B) (commonly referred to as "felony murder"). In Count 3, the state charged Wiley with the voluntary manslaughter of Antoine, i.e., that he knowingly caused Antoine's death "while under the influence of a sudden passion or in a

sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force." R.C. 2903.03(A).

{¶ 18} Voluntary manslaughter is an inferior degree offense of murder. *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 80, citing *State v. Benge*, 75 Ohio St.3d 136, 140, 661 N.E.2d 1019 (1996); *State v. Rhodes*, 64 Ohio St.3d 613, 617, 590 N.E.2d 261 (1992). "A person cannot be convicted of both murder and voluntary manslaughter for the same killing." *State v. Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 797 N.E.2d 1006, ¶ 24 (1st Dist.). "[T]he jury must find a defendant guilty of voluntary manslaughter rather than murder if the prosecution has proven, beyond a reasonable doubt, that the defendant knowingly caused the victim's death, and if the defendant has established by a preponderance of the evidence the existence of one or both of the mitigating circumstances." *Rhodes* at *id*. Thus, as this court has stated, "if the trier of fact determines that the defendant is guilty of voluntary manslaughter, it must enter a verdict of not guilty on any murder charges." *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503, ¶ 12 (8th Dist.).

{¶ 19} The trial court instructed the jury in this case that

[t]he charges set forth in each count in the indictment constitute a separate and distinct matter. You must consider each count separately and the evidence applicable to each count separately and you must state your findings as to each count uninfluenced by your verdict as to any other count. The defendant may be found guilty or not guilty of any one or all of the offenses or any combination thereof.

(Tr. 793.)

{¶ 20} The instruction provided by the trial court allowed the jury to find Wiley guilty of both murder and voluntary manslaughter. However, as the First District found in *Duncan*, where a defendant is charged with both murder and voluntary manslaughter, the jury should be instructed that the defendant can be found guilty of *either* murder or voluntary manslaughter. *Duncan*, 2003-Ohio-4695 at ¶ 29.

{¶ 21} In *Duncan*, the First District reversed the defendant's convictions on murder and voluntary manslaughter and remanded for a new trial because the trial court improperly instructed the jury, as the trial court did in this case, that it could find the defendant guilty of both murder counts as well as voluntary manslaughter. In *State v. Griffin*, 175 Ohio App.3d 325, 2008-Ohio-702, 886 N.E.2d 921 (1st Dist.), the First District followed *Duncan* and reversed the defendant's convictions for felony murder and voluntary manslaughter where the trial court's jury instructions allowed the jury to find the defendant guilty of both felony murder and voluntary manslaughter and the jury found the defendant guilty of both offenses. *Id*. at ¶ 14.[1]

---

[1] In *State v. Everett*, 1st Dist. Hamilton No. C-140275, 2015-Ohio-527, decided after *Duncan* and *Griffin*, the First District found no inconsistency in a jury verdict that found a defendant guilty of both murder and voluntary manslaughter for the same killing, reasoning that the jury's findings were made in response to two separate counts and Ohio law allows for inconsistent verdicts. *Id*. at ¶ 21. As discussed at length in *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 24-26, we do not find *Everett* to be persuasive authority because it misapplied the law regarding inconsistent verdicts. Further, it made no mention of either *Duncan* or *Griffin* and did not distinguish the holdings in those cases.

{¶ 22} When *Duncan* and *Griffin* were decided, the Ohio Jury Instructions recommended that a jury be instructed that if it found a defendant had committed murder, but also found that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, "'then you must find the defendant not guilty of murder and guilty of voluntary manslaughter.'" *Duncan* at ¶ 29, quoting 4 *Ohio Jury Instructions*, CR Section 503.02, at 156 (2002). The Ohio Jury Instructions regarding felony murder were amended in 2007 and now recommend that a jury be told that if it finds a defendant has committed murder, but also finds that the defendant acted while under the influence of sudden passion or in a sudden fit of rage provoked by the victim, "then you must find the defendant guilty of voluntary manslaughter." *Ohio Jury Instructions*, CR Section 503.02 (Rev. Feb. 24, 2007). Although the revised instruction does not explicitly state that the jury must find a defendant not guilty of murder if it finds him or her guilty of voluntary manslaughter, the import of the instruction is clear: a defendant cannot be found guilty of both murder and voluntary manslaughter for the same killing.

{¶ 23} The trial court in this case improperly instructed the jury that it could find Wiley guilty of both murder and involuntary manslaughter, which it did. Because the jury found Wiley guilty of voluntary manslaughter, it apparently believed that he had knowingly caused Antoine's death, but also that he was either under the influence of sudden passion or in a sudden fit of rage provoked by

Antoine.[2]  Having found the mitigating circumstance of provocation, the jury should not have found Wiley guilty of murder.  *See Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 796 N.E.2d 1006 at ¶ 130; *Rhodes* at 617.

{¶ 24} Wiley did not object to the jury instructions, however, and thus we must consider whether the error was a plain error that may be noticed by this court pursuant to Crim.R. 52(B).[3]  Plain error is an obvious error or defect in the trial court proceedings that affects a substantial right.  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.  An alleged error is plain error only if the error is obvious and it affected the outcome of the trial.  *Id.*  We take notice of plain error with the "utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.  The burden of demonstrating plain error is on the party asserting the error.  *Roger*s at *id.*

---

[2] When a defendant is charged only with voluntary manslaughter, it is presumed that one or both of the mitigating circumstances exists and the state needs to prove only that the defendant knowingly caused the death of another. *Amey*, 8th Dist. Cuyahoga No. 105847, 2018-Ohio-4207 at ¶ 11, citing *Rhodes*, 64 Ohio St.3d 617, 590 N.E.2d 261 at 618. When the state charges a defendant with both murder and voluntary manslaughter, however, the existence of mitigating circumstances cannot be presumed and the trier of fact must consider whether the defendant satisfied his burden to produce evidence demonstrating the existence of the mitigating circumstances under the voluntary manslaughter statute. *Amey* at ¶ 12, citing *Griffin* at ¶ 17. Because the state chose to indict Wiley on both murder and voluntary manslaughter, it was his burden to demonstrate the mitigating circumstances for voluntary manslaughter.  The jury apparently concluded that he met his burden, as evidenced by its guilty verdict on Count 3.

[3]Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶ 25} We find plain error in this case because the trial court's failure to properly instruct the jury allowed it to render guilty verdicts on both murder and voluntary manslaughter. The question is what the remedy should be for the trial court's erroneous jury instructions. Ordinarily, if the court has given a prejudicial jury instruction, the appropriate remedy is a new trial. *State v. Triplett*, 7th Dist. Mahoning No. 17 MA 0128, 2018-Ohio-5405, ¶ 17, citing *State v. Williford*, 49 Ohio St.3d 247, 253, 551 N.E.2d 1279 (1990), and *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 797 N.E.2d 1006 at ¶ 38-42.

{¶ 26} The state concedes that the trial court should have instructed the jury that it could not find Wiley guilty of both murder and voluntary manslaughter. Nevertheless, the state contends there was no manifest miscarriage of justice because the state recognized the error in the jury instructions prior to sentencing and filed a memorandum of sentencing in which it pointed out that pursuant to *Duncan*, a conviction on both murder and voluntary manslaughter would be reversible error, and suggested that the trial court sentence Wiley only on voluntary manslaughter, which the trial court did. The state contends that although the jury was not properly instructed, by finding Wiley guilty of voluntary manslaughter, the jury found the mitigating factor of provocation, and thus, any error was "fixed by the state's choice at sentencing to dismiss the murder count and seek only a sentence on the voluntary manslaughter conviction." Wiley, on the other hand, contends that the case must be remanded for a new trial but asserts that under principles of due

process, he can be retried only on the voluntary manslaughter count. Neither argument has merit.

{¶ 27} First, the state did not dismiss the murder count nor did the trial court enter a not guilty verdict on the murder count. The journal entry of sentencing specifically finds that the jury rendered a guilty verdict on the murder count and accompanying firearm specifications, even though the court did not sentence on that count. Accordingly, despite the state's argument otherwise, Wiley was indeed prejudiced by the erroneous jury instructions because they allowed the jury to find him guilty of both murder and voluntary manslaughter.

{¶ 28} Wiley's argument is similarly without merit because it erroneously assumes that because the jury found him guilty of voluntary manslaughter and the court did not sentence on the felony murder count, he has an implicit acquittal on the felony murder count. The *Duncan* Court rejected this argument. Wiley "has no ground to argue that he has an implicit acquittal on the murder charge merely because he was convicted of voluntary manslaughter. Under the instructions given by the trial court, the jury could have acquitted [him] of murder and found him guilty of voluntary manslaughter, but it chose instead to find [him] guilty of both." *Duncan*, 154 Ohio App.3d 254, 2003-Ohio-4695, 797 N.E.2d 1006 at ¶ 44. We have no way of knowing how the jury would have found had it been properly instructed.

{¶ 29} Finally, despite Wiley's argument that due process principles prohibit retrial for murder, as discussed extensively in *Hurt*, neither double jeopardy nor collateral estoppel protections bar his retrial on both the murder and voluntary

manslaughter counts. *Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, at ¶ 45-51.

{¶ 30} Wiley also challenges the trial court's failure to instruct on the inferior degree offense of aggravated assault with respect to Count 2, felonious assault. Under Crim.R. 31(C) and R.C. 2945.74, a jury may consider lesser unindicted offenses only if the evidence supports the lesser charge and the lesser charge is either (1) a lesser-included offense of the crime charged; (2) an inferior degree offense of the crime charged; or (3) an attempt to commit the crime charged, if such an attempt is an offense at law. *State v. Deem*, 40 Ohio St.3d 205, 208, 533 N.E.2d 294 (1988); *State v. Davis*, 9th Dist. Summit No. 25826, 2012-Ohio-1440, ¶ 20.

{¶ 31} Count 2 charged Wiley with felonious assault in violation of R.C. 2903.11(A)(1), which provides that "[n]o person shall cause serious physical harm to another." Aggravated assault is codified in R.C. 2903.12(A)(1), which provides, in part, that "[n]o person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly * * * cause serious physical harm to another." Aggravated assault is an inferior degree offense of felonious assault because it contains elements that are identical to the elements defining felonious assault, except for the additional mitigating element of serious provocation. *State v. Ruppart*, 187 Ohio App.3d 192, 2010-Ohio-1574, 931 N.E.2d 627 (8th Dist.), citing *Deem* at 210-211. Thus, "in a trial for felonious assault, where the defendant presents sufficient evidence of

serious provocation, an instruction on aggravated assault must be given to the jury." *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 90, citing *State v. Morrow*, 2d Dist. Montgomery No. 2002-CA-37, 2002-Ohio-6527, ¶ 7, fn. 2, citing *Deem*.

{¶ 32} Wiley contends that by indicting him on voluntary manslaughter, the state conceded that the jury should consider whether he was under the influence of sudden passion or in a sudden fit of rage brought on by Antoine's provocation when he shot him and, thus, the trial court should have instructed the jury to consider the inferior degree offense of aggravated assault with respect to the felonious assault charge in Count 2. We agree. And although Wiley did not object to the jury instructions, we find that the error was prejudicial because, as demonstrated by the jury's guilty verdict on Count 3 regarding voluntary manslaughter, if properly instructed, the jury may have found Wiley guilty on Count 2 of the inferior degree offense of aggravated assault, instead of felonious assault.

{¶ 33} Finally, although not raised by Wiley, it is apparent that because an aggravated assault instruction was required, the jury should have also been instructed regarding the felony murder charge that if it found that Wiley's commission of the offense of aggravated assault resulted in Reese's death, it should find him guilty of involuntary manslaughter. *Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, at ¶ 43.

**{¶ 34}** The first assignment of error is sustained. Wiley's convictions on Counts 1, 2, and 3 in CR-20-649082 are reversed and the case is remanded for a new trial on those counts.

### B. Ineffective Assistance of Counsel

**{¶ 35}** In his second assignment of error, Wiley contends that he was denied his constitutional right to effective assistance of counsel.

**{¶ 36}** To establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002), citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶ 37}** In evaluating a claim of ineffective assistance of counsel, a court must give great deference to counsel's performance. *Strickland* at 689. A reviewing court will strongly presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Bradley* at 141.

**{¶ 38}** Wiley acknowledges that his counsel presented a vigorous self-defense theory to the jury and advocated strongly for him but contends that counsel was ineffective for failing to object to the prosecutor's elicitation of testimony from

Det. Echols about Wiley's prearrest silence, in violation of his Fifth Amendment privilege against self-incrimination and Fourteenth Amendment right to due process.

{¶ 39} The testimony that Wiley objects to was elicited during the state's case-in-chief on its redirect examination of Det. Echols. It followed defense counsel's cross-examination of Det. Echols regarding the detective's interview of Wiley:

Q.	You had the opportunity to interview my client, Mr. Wiley?

A.	Yes.

Q.	And he willingly spoke with you and Detective Vowell at that time?

A.	Yes.

Q.	And he executed a Miranda waiver, giving up his Fifth Amendment right there, right?

A.	Yes.

Q.	Now, when you asked for those buccal swabs, he also consented to that as well, right?

A.	Yes, sir.

Q.	He didn't request any further Fifth Amendment protections or ask for a warrant at any point in that time, correct?

A.	No, he did not. I even placed a consent form in front of him and explained to him what the process was.

Q.	So, again, he was cooperative and compliant in that matter as well?

A.	Yes.

(Tr. 638-639.)

{¶ 40} The prosecutor, on redirect examination, then engaged in the following exchange with Det. Echols to which Wiley claims defense counsel should have objected:

> Q.   And then in relation to this interview, the defendant did agree to speak with you, right?
>
> A.   Yes.
>
> Q.   But this was almost a year and a half after the arrest warrant was executed for his arrest; isn't that right?
>
> A.   Yes.
>
> Q.   And did you hear from the defendant at any point in time before February 2020?
>
> A.   I did not.  He may have talked to my partner, but I did not.
>
> Q.   And have you had the occasion to investigate self-defense cases in the past?
>
> A.   Yes.
>
> Q.   And have you had the occasion to investigate self-defense cases where an individual remains on scene and decided to talk with law enforcement?
>
> A.   Yes.
>
> Q.   And was that the occasion in this case?
>
> A.   No.

(Tr. 644.)

{¶ 41} In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, the Ohio Supreme Court considered the state's use of a defendant's pre- and postarrest silence at trial.  It concluded that "allowing the use of pre-arrest silence * * * as substantive evidence of guilt in the state's case-in-chief undermines the very

protections the Fifth Amendment was designed to provide." *Id*. at ¶ 31. The Supreme Court explained that "[u]se of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their rights not to testify and take the stand to explain their prior silence." *Id*.

{¶ 42} The court found the use of prearrest silence for impeachment purposes distinguishable, however. It stated:

> When a defendant testifies at trial, the defendant has "cast aside his cloak of silence." *Jenkins v. Anderson*, 447 U.S. 231, 238, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980). Thus, use of pre-arrest silence as impeachment evidence is permitted because it furthers the truth-seeking process. Otherwise, a criminal defendant would be provided an opportunity to perjure himself at trial, and the state would be powerless to correct the record. But using a defendant's prior silence as substantive evidence of guilt actually lessens the prosecution's burden of proving each element of the crime and impairs the "sense of fair play" underlying the privilege. *See Combs v. Coyle*, 205 F.3d 269, 285 (6th Cir. 2000).

*Id*. at ¶ 33.

{¶ 43} The state contends that its questions of Det. Echols on redirect examination were not a comment on Wiley's prearrest silence but merely an attempt to "diminish the veracity of [Wiley's] comments made a year and a-half following the homicide."

{¶ 44} However, whether intended or not, we find that the prosecutor's questions were indeed a comment on Wiley's prearrest silence. The state's argument that its questions were merely designed to show the jury that Wiley's self-defense claim should not be believed because he did not remain on the scene and

speak with the police after the shooting and then asserted self-defense one and one-half years later supports our conclusion.

{¶ 45} The prosecutor's questions were elicited during the state's case-in-chief and were not used to impeach Wiley's testimony because he had not yet testified, in violation of the standards for the proper use of a defendant's prearrest silence announced in *Leach*. Nevertheless, we find the state's error to be harmless.

{¶ 46} To determine whether a prosecutor's use of a defendant's pre-arrest silence was harmless, we consider the extent of the comments, whether an inference of guilt from silence was stressed to the jury, and the extent of other evidence regarding the defendant's guilt. *State v. West,* 8th Dist. Cuyahoga No. 89229, 2008-Ohio-2190, ¶ 13. Here, the prosecutor's questions were not extensive, the state did not stress to the jury that Wiley's prearrest silence demonstrated guilt, and there was other overwhelming evidence of Wiley's guilt, including Wiley's admissions that he shot Antoine in the back as he ran away, he is a drug dealer, and all of the items the police found in his backpack, including the gun, were his. Because the state's error was harmless, we do not find that counsel was ineffective for not objecting to the prosecutor's questions.

{¶ 47} Wiley next asserts that counsel was ineffective because he (1) did not object to the trial court's incorrect jury instructions regarding self-defense; and (2) failed to request a castle doctrine instruction. In his third assignment of error, Wiley contends that his convictions for voluntary manslaughter and felonious assault should be reversed because the trial court gave the jury contradictory instructions

regarding the duty to retreat with respect to the defense's self-defense theory. We consider Wiley's arguments regarding the jury instructions together because they are related.

{¶ 48} The trial court gave the following instructions to the jury regarding the use of self-defense and the duty to retreat:

> The defendant is allowed to use deadly force in self-defense and/or defense of his residence. The state must prove beyond a reasonable doubt that the defendant when using deadly force did not act in self-defense and/or defense of his residence.
>
> * * *
>
> You may not consider the possibility of retreat as a fact of determining whether the defendant in using deadly force and self-defense and/or defense of his residence reasonably believed that the force was necessary to prevent injury, loss, or risk of life or safety.
>
> * * *
>
> A person is allowed to use force that is reasonably necessary under the circumstances to protect himself and/or his residence from apparent danger.
>
> * * *
>
> The duty — the defendant had a duty to retreat if he was in a place in which he had a lawful right to be. The defendant had no duty to retreat if he was in a place which he had a lawful right to be.

(Tr. 764-768.)

{¶ 49} The castle doctrine is codified in R.C. 2901.99, which states in pertinent part that "[n]o person has a duty to retreat before using force in self-defense defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be." Despite Wiley's assertion that

counsel did not request a castle doctrine instruction, it is apparent that the instruction was included in the trial court's instructions to the jury.

{¶ 50} Although the trial court briefly misspoke when it stated that the "defendant had a duty to retreat if he was in a place in which he had a lawful right to be," the court immediately corrected the instruction by properly instructing the jury that "the defendant had no duty to retreat if he was in a place which he had a lawful right to be." We find no error in the jury instructions regarding self-defense and the castle doctrine and, accordingly, no ineffective assistance of counsel on this basis. The second and third assignments of error are overruled.

### C. Joinder

{¶ 51} Wiley next contends that the trial court committed reversible error in granting the state's motion to join the indictments. He contends that he was prejudiced by the joinder because he "had no choice" but to testify to defend against the homicide charges, but by testifying, he was "fair game for cross-examination" regarding the drug charges. He contends that if the cases had been tried separately, he could have testified only in the homicide case regarding his self-defense claim and would not have been forced to admit that he is a drug dealer, which he asserts "inevitably gave the prosecutor a conviction as to all charges" in the drug case.

{¶ 52} The court may order two or more indictments to be tried together if the offenses could have been joined in a single indictment. Crim.R. 13. Multiple offenses may be charged together "if the offenses charged * * * are of the same or similar character, or are based on the same act or transaction, or are based on two

or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A). Generally, the law favors joining multiple offenses of the same or similar character in a single trial unless joinder would prejudice the defendant. *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990); Crim.R. 14.

{¶ 53} This court reviews a trial court's decision on joinder for an abuse of discretion. *State v. Wilson,* 2016-Ohio-2718, 51 N.E.2d 676, ¶ 21 (8th Dist.) An abuse of discretion occurs when the court's decision is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 54} A defendant is not prejudiced by joinder if evidence of one offense would be admissible at a separate trial of the other offense as "other acts" evidence under Evid.R. 404(B). *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 30. "Other acts" evidence is permissible under Evid.R. 404(B) if the evidence is "related to and shares common features with the crime in question," as long as it is used for purposes other than proving that the accused acted in conformity with a particular character trait. *State v. Bonneau*, 8th Dist. Cuyahoga No. 97565, 2012-Ohio-3258, ¶ 21, citing *State v. Lowe*, 69 Ohio St.3d 527, 634 N.E.2d 626 (1994), paragraph one of the syllabus; *see also State v. Williams*, 132 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 15.

{¶ 55} Wiley was charged in CR-20-649082 with a homicide that occurred on September 17, 2018, and involved the use of a gun. He was arrested on February

25, 2020, during the execution of a search warrant at his apartment during which the police recovered drugs, drug paraphernalia, and a loaded firearm. He was charged in CR-20-649120 with various drug possession and trafficking offenses stemming from the items recovered during that search.

{¶ 56} At the time of his arrest, Wiley admitted that the drugs and firearm recovered by law enforcement were his. The firearm was later determined to be a ballistics match to the gun used in the homicide. Wiley later gave a Mirandized statement in which he admitted that the firearm recovered during the search of his apartment was his weapon and that he used it during the commission of the homicide; he also admitted that he is a drug dealer.

{¶ 57} It is apparent that under the facts and circumstances giving rise to the two indictments, "other acts" evidence regarding the offenses charged in one indictment would have been properly admitted at trial of the offenses charged in the other indictment if the cases had been tried separately. Wiley's interview with Det. Echols in the homicide case would have properly been introduced in the drug case, and the results of the search warrant at Wiley's apartment that led to the drug case would have properly been introduced in the homicide case. Accordingly, Wiley was not prejudiced by joinder of the two cases and the trial court did not abuse its discretion in granting the state's motion for joinder.

{¶ 58} The fourth assignment of error is overruled.

## D. Jail-Time Credit

{¶ 59} In his fifth assignment of error, Wiley contends that the trial court erred when it did not grant him proper jail-time credit at sentencing.

{¶ 60} Pursuant to R.C. 2929.19(B)(2)(g)(i):

> [I]f the sentencing court determines at the sentencing hearing that a prison term is necessary or required, the court shall * * * [d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced and by which the department of rehabilitation and correction must reduce the definite prison term imposed on the offender as the offender's stated prison term * * *.

{¶ 61} The state concedes that the trial court did not calculate and include Wiley's jail-time credit in the sentencing entry. Accordingly, the fifth assignment of error is sustained. The trial court should calculate and grant Wiley the correct jail-time credit.

## E. Merger of Offenses at Sentencing

{¶ 62} In his sixth assignment of error, Wiley contends that the trial court committed plain error by not merging his convictions for voluntary manslaughter and felonious assault.

{¶ 63} Under R.C. 2941.25, where the same conduct by a defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one offense. A defendant charged with multiple offenses may be convicted of all the offenses, however, if (1) the defendant's conduct constitutes

offenses of dissimilar import, i.e., each offense caused separate identifiable harm; (2) the offenses were committed separately; or (3) the offenses were committed with separate animus or motivation. R.C. 2941.25(B); *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.23d 892, ¶ 13. Thus, to determine whether offenses are allied, courts must consider the defendant's conduct, the animus, and the import. *Id*. at paragraph one of the syllabus.

{¶ 64} When a defendant fails to raise the issue of allied offenses in the trial court, he forfeits all but plain error review on appeal. *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

{¶ 65} Wiley committed the voluntary manslaughter and felonious assault on Antoine with the same conduct and animus, i.e., a single gunshot meant to cause him physical harm. The import of his conduct for each offense was the same — Antoine's death. Accordingly, the two offenses were allied offenses of similar import and the trial court erred in sentencing Wiley on both offenses. Nevertheless, because we are remanding for a new trial on Counts 1, 2, and 3, the error is moot.

{¶ 66} Judgment affirmed in part; reversed in part; and remanded.

It is ordered that the parties share equally in the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. Case remanded to the trial court.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
CORNELIUS J. O'SULLIVAN, JR., J., CONCUR